UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| KEHRER BROTHERS CONSTRUCTION, INC., <br>     Plaintiff, <br><br> v. <br><br> INTERCOASTAL ROOFING SOLUTIONS, LLC, and STEVEN VALLEY, <br>     Defendants, <br><br> INTERCOASTAL ROOFING SOLUTIONS, LLC, <br>     Counterclaim Plaintiff, <br><br> v. <br><br> KEHRER BROTHERS CONSTRUCTION, INC., <br>     Counterclaim Defendant. | Civil Action No. 3:13-cv-00085 <br><br> AFFIDAVIT OF DAN ARNOLD |

I, DAN ARNOLD, having been duly sworn, do hereby state under oath that I am over the age of twenty-one (21) years and that I have personal knowledge of the following:

1. I reside in Sebastian, Florida.

2. I have been a roofer for over 37 years. I have sometimes served as a roofer journeyman, but on various occasions I have also served as a working superintendent or working foreman.

3. During the period from Jan. 2011 to December 2012, I was employed by Intercoastal Roofing Solutions, LLC (hereinafter referred to as "Intercoastal"). The principal of Intercoastal who served as my boss during my employment with Intercoastal was Steven Valley.

1

4.      Among my responsibilities assigned to me by Steven Valley was to participate in estimating and to supervise Intercoastal's performance of roofing work, metal wall panel work and other work at the Iowa State Penitentiary in Fort Madison, Iowa (hereinafter referred to as the "Iowa project"). Steven Valley and I visited the Iowa project in April 2012 at least twice to inspect the project site and the improvements including the status of installation of the metal roofing, wall panels and related work.

5.      During the April 2012 through early May 2012 time frame, I participated with Steve Valley in the preparation of estimates for Intercoastal to complete the installation of the roofing, wall panel and related work that a previous contractor by the name of Cambridge Quality Construction had not completed. I will refer to that work as the "Cambridge work". I and Steven Valley met with Joe Kehrer of Kehrer Brothers Construction, Inc. (hereinafter referred to as "KBC") along with representatives of S. M. Wilson & Co. (hereinafter referred to as "S.M. Wilson") in the April 2012 time frame to discuss Intercoastal completing the installation of the Cambridge work.

6.      In late April 2012, I was present when Steven Valley of Intercoastal and Joe Kehrer of KBC agreed that Intercoastal would perform the remaining Cambridge work for the price of $1,286,775.00 and that the Cambridge work would resume by May 7, 2012.

7.      I worked at the Iowa project site on nearly every working day from around May 1, 2012 until sometime around mid-September 2012.

8.      The Iowa project was subject to a Project Labor Agreement, also known as a "PLA". Intercoastal had to have discussions with the sheet metal union local business agents to come to terms that would enable Intercoastal to sign the Project Labor Agreement. The agreement was not reached with the union local until late in May, 2012.

9. In the meantime, S.M. Wilson put sheet metal workers on the S.M. Wilson payroll who were members of the sheet metal workers' union local to commence performing the remaining Cambridge work which Intercoastal had agreed to perform. S.M. Wilson commenced that work on May 7, 2012.

10. Near the end of May 2012, shortly after Intercoastal signed the Project Labor Agreement, Intercoastal hired over 20 sheet metal workers who were members of the sheet metal workers' union local. Most of the workers Intercoastal hired had worked for S.M. Wilson earlier in the month of May. The Intercoastal certified payroll records reflect that Intercoastal had the 20-plus new hirees begin working at the Iowa project for Intercoastal on May 29, 2012. That comports with my memory that Intercoastal did not gear up at the Iowa project until very near the end of May 2012.

11. The work performed by the S.M. Wilson-directed sheet metal workers in May 2012 formed a part of the remaining Cambridge work upon which Intercoastal based its lump sum price of $1,286,775.00.

12. KBC hired me in early January 2013 to serve as KBC's superintendent to complete the work that Intercoastal had not completed. When I returned to the Iowa project in early January 2013, after leaving the project site in September 2012 to oversee the performance of Intercoastal's work at a project site in Columbus, Ohio, I observed that various items of Intercoastal's work remained to be performed, primarily consisting of corrective work necessary to obtain to roofing manufacturer's warranty and various punch list items.

13. The manufacturer of the roofing system installed at the Iowa project is McElroy Metal.

14. Attached to my Affidavit as Arnold Exhibit 1 and bate stamped KB003127 through KB003162 is a copy of an email by Kris Riedy of S.M. Wilson together with a copy of the Weathertightness Warranty Inspection Report by McElroy Metal based on an inspection reported to have occurred on November 28th and November 29th, 2012 at the Iowa project. I am familiar with the McElroy Metal original inspection report as I reviewed the report in early January 2013. Part of my responsibilities as KBC's superintendent was to oversee the performance of the various items of roofing and related work requiring correction or completion as identified in that report.

15. Attached to my Affidavit as Arnold Exhibit 2 and bate stamped KB002813 through KB002829 is a true copy of the following: (a) a letter dated March 18, 2013 signed by Joe Kehrer and addressed to Kris Ready of S.M. Wilson; (b) my email dated March 13, 3013 to Pam Richter of KBC; and (c) the Weathertightness Warranty Inspection Report dated February 26, 2013 received from McElroy Metal. I oversaw the performance of the work required by that re-inspection report. As the report reflects, a McElroy Metal representative re-inspected the roofing work at the Iowa project on February 13th and 14th, 2013, and I was present at the Iowa project that day and participated in the re-inspection process.

16. The work performed by KBC in 2013 to complete and correct Intercoastal's work at the Iowa project (hereinafter referred to as the "completion and correction work") was performed under my direction and supervision. KBC subcontracted with Laux HVAC & Sheet Metal, an experienced HVAC and Sheet Metal contractor, on a time and material basis to provide the sheet metal workers required for the completion and correction work. All the Laux employees who worked on the Iowa project were, to my knowledge, members of the sheet metal workers' union local. Those workers were, in my judgment, qualified and sufficiently

4

experienced to perform the completion and correction work, and they accomplished that work in an reasonably efficient and productive manner, and the rates charged by Laux for the sheet metal labor were reasonable.

17. Attached to my Affidavit as Arnold Exhibit 3 and bate stamped KB005437 through KB005556 is a true copy of a summary based on cost information in my possession together with copies of various invoices, checks and other cost records that are summarized in the summary.

18. It was agreed between Joe Kehrer of KBC and me that I would be paid at the rate of $500.00 per day to serve as the superintendent for KBC on the Iowa project, plus a per diem of $25.00 per day, and reimbursement for airfare to and from the Project site, lodging, car rental, gasoline and related expenses. For the period from January 13, 2013 through February 14, 2013, I earned a salary of, and was paid by KBC, the total of $14,000.00 for the 28 working days of work at the Iowa project. My salary was commensurate with my job knowledge and level of experience.

19. The summary also accurately reflects the amounts paid by KBC to me for my per diem, as well as the amounts reimbursed to me for my lodging, automobile and related expenses.

20. The summary also accurately reflects the per diem of $25 per day paid to the following workers who performed work at the Iowa project as part of the completion and correction work in 2013, namely Tim Arnold, Rob Mense and Sean Depper.

21. By means of three invoices, Laux charged KBC for the sheet metal labor furnished by Laux to perform the completion and correction work. KBC paid those three invoices totaling to $52,952.80. I reviewed the hours and rates charged by Laux, and in my

judgment they are reasonable for the quantity, nature and difficulty of the completion and correction work Laux was hired to perform.

22. As part of my responsibility as KBC's superintendent, I purchased propane, diesel fuel and rags which were used by Laux employees or by KBC employees at the project site in connection with the performance of the completion and correction work at the Iowa project.

23. The total for the Laux-supplied labor, my supervision and the other costs as identified on the first two pages of the summary is $75,616.54. In my judgment, those costs are fair and reasonable for the amount of completion and correction work that was performed and completed satisfactorily by KBC and Laux in 2013 at the Iowa project.

Further Affiant sayeth not.

_Dan R Arnold_

State of Florida        )
                        ) ss
County of Indian River  )

On this 29 day of May, 2015, before me personally appeared Dan Arnold, who being duly sworn by me, did depose and state under oath that the facts in this Affidavit are true and correct to the best of his knowledge and information.

_Colleen C Higgins_
Notary Public

My commission expires:

COLLEEN C. HIGGINS
MY COMMISSION # FF 187609
EXPIRES January 06, 2019
(407) 398-0153   FloridaNotaryService.com